UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| WILLIAM RHOMER,<br>TDCJ No. 02039278,<br><br>    Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br><br>    Respondent. | §<br>§<br>§<br>§<br>§<br>§    CIVIL NO. SA-21-CA-0047-XR<br>§<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Petitioner William Rhomer's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Petitioner's Memorandum in Support (ECF No. 4), and Respondent Bobby Lumpkin's Answer thereto (ECF No. 9). Petitioner challenges the constitutionality of his state court felony murder conviction, arguing that his trial counsel was ineffective and that the State presented false testimony at his trial. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

**I. Background**

The facts of Petitioner's case were accurately summarized by the Texas Court of Criminal Appeals:

> [Petitioner] left a bar shortly before 3:00 a.m. and drove his car eastbound on Nakoma Drive. The decedent, Gilbert Chavez, was riding his motorcycle in the westbound lane of Nakoma Drive. As both [Petitioner] and Chavez approached the intersection of Nakoma Drive and Colwick Street from opposite directions, the vehicles collided. Mario Negron and Kenneth Ferrer testified that

they were driving in the westbound lane of Nakoma Drive around 3:00 a.m. when they came upon the accident. Both testified to driving through the debris of the accident.

Negron and Ferrer saw Chavez was badly injured and lying near his motorcycle, and they called for help. They saw [Petitioner] at the scene stumbling near his car which had crashed into a building. When police officers arrived, [Petitioner] told them that Chavez had driven into his lane of traffic; he later told one of the officers that Chavez had pulled out in front of him as if Chavez had been traveling in the same direction as [Petitioner] and had hit [Petitioner] on the right side.

Chavez was taken to the hospital where he later died from his injuries. Dr. Randy Frost, the Bexar County Chief Medical Examiner, testified the injuries were consistent with an automobile accident, and multiple traumatic blunt force injuries were the cause of death.

*Rhomer v. State*, 569 S.W.3d 664, 667 (Tex. Crim. App. 2019); (ECF No. 8-30).

After hearing all the evidence, a Bexar County jury found Petitioner guilty of felony murder (enhanced as a repeat offender) and sentenced him to seventy-five years of imprisonment.[1] *State v. Rhomer*, No. 2012-CR-9066 (290th Dist. Ct., Bexar Cnty., Tex. Dec. 8, 2015); (ECF No. 8-15 at 289-90).

The Texas Fourth Court of Appeals affirmed Petitioner's conviction in a published opinion on direct appeal. *Rhomer v. State*, 522 S.W.3d 13 (Tex. App.—San Antonio, Apr. 12, 2017, pet. granted Nov. 8, 2017); (ECF No. 8-16). After granting Petitioner's petition for discretionary review and hearing oral argument, the Texas Court of Criminal Appeals affirmed the judgment of the court of appeals in a published opinion delivered January 30, 2019. *Rhomer*, 569 S.W.3d at 672; (ECF No. 8-30). Thereafter, Petitioner filed a state habeas corpus

---

[1] Petitioner had actually been convicted on three counts that were alleged in the indictment—felony murder, intoxication manslaughter, and manslaughter. (ECF No. 8-15 at 272-74). But in its final judgment, the trial court abandoned counts two and three and sentenced Petitioner to seventy-five years on count one only.

2

application challenging the constitutionality of his state court conviction, but the Texas Court of Criminal Appeals eventually denied the application without written order based on the findings of the trial court and on the court's own independent review of the record. *Ex parte Rhomer*, No. 91,161-01 (Tex. Crim. App.); (ECF Nos. 8-31, 8-35 at 4-22).

Petitioner initiated the instant proceedings on January 20, 2021, by filing a petition for federal habeas corpus relief. (ECF No. 1). In the petition and supplemental memorandum that followed, Petitioner raises the same two grounds for relief that were rejected by the Texas Court of Criminal Appeals during his state habeas proceedings: namely, that (1) his trial counsel rendered ineffective assistance by failing to consult an expert in accident reconstruction, and (2) the State relied on false testimony to obtain a conviction.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Merits Analysis

**A.     Trial Counsel (Claim 1).**

In his first claim for relief, Petitioner contends that his trial counsel rendered ineffective assistance by failing to consult an expert in accident reconstruction to challenge the testimony of the State's expert, Detective John Doyle. According to Petitioner, this failure rendered counsel unable to adequately challenge the admissibility of Detective Doyle's testimony as an expert or

4

discredit his testimony on cross-examination. Petitioner also contends that delays and neglect from his previous counsel contributed to trial counsel's ineffectiveness. These allegations were rejected by the Texas Court of Criminal Appeals during Petitioner's state habeas proceedings. As discussed below, Petitioner fails to demonstrate the state court's determination was either contrary to, or an unreasonable application of, Supreme Court precedent.

    1.    <u>Detective Doyle's Testimony</u>

During Petitioner's direct appeal proceedings, the Texas Court of Criminal Appeals accurately summarized Detective Doyle's testimony as follows:

> Detective John Doyle was assigned to the San Antonio Police Department's Traffic Investigation Detail. In his twenty-three years as a police officer, he had investigated at least a thousand vehicular crashes and had testified once as an accident reconstruction expert in a case that involved two cars and a pickup truck. To qualify for his position in SAPD's Traffic Investigation Detail, Doyle attended three courses related to vehicle collisions. Doyle learned the basics of crash investigation—including "skid to stop" formulas, diagram drawing and scene measurement—in an intermediate crash investigation course. He later attended an advanced course at Texas A&M University where he learned how to conduct an "energy analysis" to calculate speed. Doyle also took a reconstruction course and courses on accidents involving pedestrians and bicycles. He testified that his accident reconstruction course work totaled 501 hours.
>
> Doyle never took a course specifically related to motorcycle accident reconstruction and testified that he did not know of one offered in Texas. He admitted that there are "different physics, different science, [and] different mathematical principles" when evaluating a crash that involves two cars versus a crash that involves a car and a motorcycle. He testified, however, that the differences typically have to do with speed calculations and that the "basic facts" of an accident are still the same.
>
> At the accident scene, Doyle observed [Petitioner]'s car crashed into a building and Chavez's motorcycle lying in the adjacent parking lot. Doyle did a visual inspection of the debris, tire marks and vehicular damage. He then used a precision surveying tool, a Sokkia instrument, to map the locations of the vehicles, debris, curb strikes and scrapes, and the dimensions and curvature of the road. Using these measurements, Doyle created a diagram of the accident that showed the spacial relationship between all of the pieces of evidence at the scene

of the accident. Doyle could not calculate the speed of the vehicles at the time of the collision due to the huge weight differential between the car and the motorcycle and due to [Petitioner]'s car having crashed into a building without displacing it.

Detective Doyle observed a debris field in the westbound lane of Nakoma Drive that included pieces of Chavez's motorcycle. The debris was in front of the area of impact because the momentum of the debris carried it in the direction in which the motorcycle was traveling at the time of impact. There was no debris in [Petitioner]'s lane. There was no pre-impact braking by either the motorcycle or the car. There were three curb strikes and two scrape marks between the resting place of the motorcycle and the resting place of the car. [Petitioner]'s car sustained damage on its front left corner because the motorcycle struck the car's wheel well. Part of [Petitioner]'s front bumper was lodged in the cooling fins on the left side of Chavez's motorcycle.

On impact the motorcycle and Chavez "took two different paths" with the motorcycle pushed up and backwards while Chavez went over and beside the car, flinging bodily tissue onto it from the gaping wound in his leg and leaving a trail of hand prints in the dust on the car.

Doyle formed the opinion that the wreck was "more or less" a head-on collision:

> Basically that the vehicle driven by [Petitioner] straightened out the cur[ve], hit the motorcycle in the—his traffic lane, in the oncoming traffic lane. The motorcyclist was struck by the left front corner of the car. He went over the car and the vehicle was— motorcycle was pushed backwards into the parking lot. The vehicle continued on in its same direction resulting in ultimately the death of the complainant.

[Petitioner]'s failure to negotiate the curve was consistent with alcohol impairment. Doyle testified, "That's one of the very, very common factors in alcohol-related crashes is failing to negotiate a curve, basically straightening out a curve, very common." He concluded that [Petitioner] caused the crash due to alcohol intoxication. He dismissed [Petitioner]'s alternative, on-scene claims that Chavez came up from behind him and hit him on his right or crossed into [Petitioner]'s lane; Doyle found those scenarios to be inconsistent with the physical evidence that he observed.

*Rhomer*, 569 S.W.3d at 667-68; (ECF No. 8-30 at 3-5).

6

2.     The *Strickland* Standard

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims

on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

3. Failure to Consult an Expert

Petitioner contends his trial counsel, James Tocci, was ineffective for failing to consult with an expert in accident reconstruction to properly challenge Detective Doyle's qualifications and conclusions. According to Petitioner, Detective Doyle was not qualified to render an opinion in this case and his testimony was false, misleading, and speculative, but Mr. Tocci failed to adequately challenge the admissibility and credibility of Detective Doyle's testimony due to his own lack of knowledge in the science of accident reconstruction. Had Mr. Tocci properly cross-examined Detective Doyle, Petitioner argues, the outcome of his trial would have been different because there was no other evidence supporting the State's theory that Petitioner caused the accident.

Petitioner raised this allegation during his state habeas proceedings. The state habeas trial court obtained an affidavit from Mr. Tocci, which the court summarized, in pertinent part, as follows:

a. Mr. Tocci was appointed to represent [Petitioner] after his original attorney, Brendan Duganne, was removed from the case.

b. Brendan Duganne is no longer licensed to practice law in the State of Texas.

c. The case was pending for almost three years before Mr. Tocci was appointed.

d. Mr. Tocci immediately requested [Petitioner]'s file from Mr. Duganne, but to the frustration of Mr. Tocci, Mr. Duganne never turned his file over.

e. The judge of the court, Melisa Skinner, was known to push cases to trial quickly and did not allow many continuances. Since this case had been pending for almost three years, Mr. Tocci knew he would be going to trial soon and was stressed to be ready for trial.

f. There was a large amount of discovery to review in this felony murder case that was originally charged as an intoxication manslaughter case.

g. Mr. Tocci reviewed a large amount of depositions from the civil lawsuit that was tied to the case.

h. The law regarding blood evidence recently changed, so Mr. Tocci spent a lot time preparing to suppress the blood evidence at trial, for which he was successful.

1. The case was originally set for trial in September of 2015. Mr. Tocci filed a continuance because he had not had enough time to adequately review the case, Mr. Duganne had yet to turn over his file, and he had not had the time to consult with an accident reconstruction expert.

j. The judge gave Mr. Tocci an incredibly short deadline, he believes it was one week, to retain an expert. He was unable to meet this deadline.

k. Mr. Tocci did not have an expert during trial to assist him in appropriately challenging the state's expert, Detective Doyle.

i. Mr. Tocci reached out to two different accident reconstruction experts before the trial who, from what he recalls, told him it was quite possible, based on Detective Doyle's "investigation", that [Petitioner]'s car drifted into the other lane as Detective Doyle concluded.

9

m. One of these experts could not help Mr. Tocci in any capacity and said if he were brought on to challenge the State's expert, he might have to be called as a witness to refute testimony.

n. Mr. Tocci never discussed with either expert Detective Doyle's qualifications or methodology as to how he reached his conclusions. Hence, looking back, Mr. Tocci believes the experts assumed that Detective Doyle had the qualifications to render his opinion as an expert.

o. Mr. Tocci provided one expert crime scene photos and accident reports.

p. Neither expert inspected the vehicles involved in the crash.

q. One expert said there were possibly other theories of how the accident occurred, but Mr. Tocci felt it was not reasonable considering the available case information.

r. Mr. Tocci does not know how much time either expert spent looking over Detective Doyle's report.

s. Neither expert was appointed or retained to assist Mr. Tocci.

t. Once the blood evidence was thrown out, Mr. Tocci's strategy was to challenge the cause of the accident.

u. Mr. Tocci did not think the judge was going to allow Detective Doyle to testify as an expert based upon his qualifications.

v. Although Mr. Tocci doesn't specifically recall, this would have been one reason why he did not have an expert consulting him on the case during trial.

w. The judge, despite his lack of qualifications, allowed Detective Doyle to testify as an expert.

x. Mr. Tocci now believes he should have had an expert to help him challenge Detective Doyle as an expert and to challenge his opinions about the accident.

y. The only testimony to support the state's theory of the case was Detective Doyle's testimony. Without his opinion on causation, Mr. Tocci believes the outcome of the trial would have been different.

z. Mr. Tocci believes Detective Doyle's testimony and theory of the accident was not credible or reliable.

10

aa. Mr. Tocci believes Detective Doyle's testimony should not have been admitted at trial and Mr. Tocci thought he could point this out without the help of an expert.

bb. The failure to retain an expert was not part of Mr. Tocci's trial strategy.

cc. Mr. Tocci was, "under a huge time crunch from the judge to get an expert" and the two experts that Mr. Tocci spoke with indicated that Detective Doyle's theory of the accident could be true.

(ECF No. 8-35 at 132-35).

After finding Mr. Tocci's affidavit to be truthful and credible, the state habeas trial court concluded that it did not know if Petitioner's trial would have been different had Mr. Tocci been able to hire an expert and ask Detective Doyle different questions. *Id*. at 136. For this reason, the trial court made no recommendation as to Mr. Tocci's effectiveness. *Id*. Nevertheless, the Texas Court of Criminal Appeals denied Petitioner relief based on the trial court's findings as well as its own independent review of the record. (ECF No. 8-31).

Petitioner fails to show that the state court's ruling was either contrary to, or involved an unreasonable application of *Strickland* or an unreasonable determination of the facts based on the evidence in the record. To start, Petitioner has not demonstrated that Mr. Tocci acted deficiently by failing to hire an expert in accident reconstruction. "[C]ounsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). But counsel is given wide latitude to determine how best to utilize the limited investigative resources that are available. *Richter*, 562 U.S. at 107 ("Counsel was

11

entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").

Here, the record indicates that, despite a short deadline imposed by the trial court, Mr. Tocci sought the opinion of two different accident reconstruction experts prior to trial concerning the results of Detective Doyle's investigation. Because both experts indicated that Detective Doyle's conclusion was "quite possible," Mr. Tocci did not retain their services. Given the short deadline and the complexity of the subject matter, it was reasonable for counsel to rely on the opinions of the experts he had contacted instead of continuing to search for a more favorable viewpoint. *Murphy v. Davis*, 901 F.3d 578, 592 (5th Cir. 2018) ("[C]ounsel should be able to rely on [an expert] to alert counsel to additional needed information . . ."); *Segundo v. Davis*, 831 F.3d 345, 352 (5th Cir. 2016) (refusing to find counsel ineffective for relying on "reasonable expert evaluations" of evidence). While Mr. Tocci now believes, with the benefit of hindsight, that he should have found an expert to challenge Detective Doyle's qualifications and methodology, there was no reason for him to have doubted the conclusions given to him by the experts he consulted at the time. *See Murphy*, 901 F.3d at 592 ("Without a red flag . . . it is too much to insist that counsel second-guess [his expert].").

Furthermore, a petitioner's unsupported claims regarding an uncalled expert witness "are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). To prevail on an IATC claim based on counsel's failure to consult with or call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Day v.*

*Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  The requirements of showing availability and willingness to testify "[are] not a matter of formalism." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010).  A petitioner must present evidence on these points as part of the burden of proving trial counsel could have found and presented witnesses, including expert witnesses.  *Id*.

To support his IATC allegation, Petitioner relies heavily on the affidavit and report of Charles Ruble, an expert in accident reconstruction retained by Petitioner during his state habeas proceedings to evaluate Detective Doyle's qualifications and critique Mr. Tocci's questioning of Detective Doyle.  (ECF No. 4-4).  After reviewing Detective Doyle's testimony and the relevant police records pertaining to the accident, Mr. Ruble concluded that Detective Doyle lacked knowledge of the relevant scientific principles regarding accident reconstruction and provided false and unreliable testimony concerning the location and cause of the accident.  *Id*.  Mr. Ruble also concluded that Mr. Tocci failed to adequately question Detective Doyle about his qualifications or the reliability of his opinions.  *Id*.  However, neither Petitioner nor Mr. Ruble offer any evidence that he was available and willing to testify at Petitioner's original trial.  *See Day,* 566 F.3d at 538 ("[T]he petitioner must . . . demonstrate that the witness was available to testify and would have done so"); *Woodfox,* 609 F.3d at 808 (experts required to state that they could and would have testified at original trial even where they otherwise state they would be willing to testify in future proceedings).  Given this complete abdication of the requirements of *Day* and *Woodfox*, Petitioner has not established that Mr. Tocci rendered ineffective assistance by not consulting an accident reconstruction expert prior to examining Detective Doyle.

Regardless, even assuming Mr. Tocci erred by not consulting Mr. Ruble (or a similar expert) before questioning Detective Doyle, Petitioner has not established that this deficiency

prejudiced his defense under *Strickland*. Again, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. Petitioner does not make this showing.

The essence of Petitioner's claim is that Detective Doyle was not qualified to give an opinion on the cause and location of the accident, but without the aid of an expert, Mr. Tocci's questions were inadequate to assist the trial court in ruling on the admissibility of Detective Doyle's testimony. Had Mr. Tocci asked the right questions, the argument goes, Detective Doyle would not have qualified as an expert and his conclusions would have been exposed as unreliable.

Petitioner is wrong on both accounts. Indeed, the Texas Court of Criminal Appeals rejected this very argument during Petitioner's direct appeal proceedings, concluding that Detective Doyle was qualified to testify as an expert in accident reconstruction and that his testimony in this case was reliable. *Rhomer*, 569 S.W.3d at 672; (ECF No. 8-30 at 13). Concerning Detective Doyle's qualifications, the court explained:

> Although Doyle had never taken a class that focused on motorcycle-involved crashes, he knew how to analyze an accident scene based on debris, vehicle damage, skid and gouge marks and vehicle resting places, and he had done so hundreds of times. The involvement of a motorcycle in this collision did not interfere with his ability to analyze the physical evidence present at the accident scene, and his background went to the very matter about which he testified.

\* \* \*

> The trial court is supposed to act as a gatekeeper against expert testimony that would not help the trier of fact. This is not the same thing as requiring every expert to be the best possible witness. We agree with the State that the relevant question was not whether Doyle lacked a particular qualification that would have made him the ideal expert witness but whether the qualifications that he did have would have assisted the jury in determining an issue of fact. We hold that Doyle's qualifications would have assisted the jury in determining issues of fact, namely, where and how the collision happened, and we affirm the court of appeals' decision that the trial court did not abuse its discretion in determining Doyle was qualified to offer an expert opinion on these issues.

*Rhomer*, 569 S.W.3d at 670-71. Concerning the reliability of Detective Doyle's testimony, the court concluded:

> We agree with the court of appeals that the *Nenno* [*v. State*, 970 S.W.2d 549 (Tex. Crim. App. 1998)] test applied to Doyle's testimony because his opinions were based on his training and experience in evaluating physical evidence at crash scenes more than on a hard scientific inquiry such as calculating a vehicle's pre-impact speed. *Rhomer v. State*, 522 S.W.3d 13, 17 (Tex. App.—San Antonio 2017). We conclude that (1) the field of accident reconstruction is a legitimate one, (2) the subject matter of Doyle's expert testimony was within the scope of that field, and (3) his testimony properly relied upon and utilized the principles involved in the field, i.e., examining the physical evidence in the context of the crash site to draw conclusions about the location and cause of the crash.

*Id*. at 671-72 (footnote omitted). As such, Petitioner cannot demonstrate a reasonable likelihood that Detective Doyle's testimony would have been found inadmissible had Mr. Tocci consulted an available expert prior to trial.

In sum, Petitioner fails to "overcome the strong presumption that counsel's representation fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. He also has not shown a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In other words, Petitioner has not demonstrated that the state court's rejection of his IATC claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond

15

any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As a result, viewing the allegation under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's claim cannot survive. *See Richter*, 562 U.S at 105.

    4.    <u>Previous Counsel</u>

Petitioner next contends that his first attorney, Brendan Duganne, compromised his ability to defend himself and "played a role in rendering Mr. Tocci ineffective." (ECF No. 4 at 29). Although Mr. Duganne did not ultimately try the case, Petitioner argues, "his neglect for three years caused significant problems that lead to Mr. Tocci's ineffectiveness at trial." *Id*. at 30. Petitioner provides no explanation as to what these "significant problems" were, much less how they relate to his claim that Mr. Tocci failed to consult an accident reconstruction expert.

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same).

Here, Petitioner's allegation is conclusory, speculative, and unsupported by any evidence or facts. But "absent evidence in the record," this Court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross*, 694 F.2d at 1011). Thus, Petitioner's claim is denied. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are

insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

B.  **False Testimony (Claim 2).**

In his second claim for relief, Petitioner argues that the State presented and relied upon the false testimony of Detective Doyle in order to obtain a conviction in violation of his due process rights under *Napue v. Illinois*, 360 U.S. 264 (1959). In addition to his previous argument (addressed above) that Detective Doyle's testimony regarding the location and cause of the accident was unreliable, Petitioner contends that other portions of Detective Doyle's testimony were also false or misleading. This includes testimony that: (1) he could not do momentum or speed calculations because of the difference in the mass between the car and motorcycle, (2) speed and momentum calculations would not work anyway because the automobile came to an unnatural stop, and (3) despite not being able to determine an exact point of impact, he could assume an area of impact based on a 12-foot diameter distribution of road debris.

As with Petitioner's IATC allegations, the Texas Court of Criminal Appeals rejected this allegation during Petitioner's state habeas proceedings. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

1.  The *Napue* Standard

Under *Napue*, a criminal defendant is denied due process when the State knowingly uses perjured testimony or allows false testimony to go uncorrected at trial. 360 U.S. at 269; *see also Giglio v. United States*, 405 U.S. 150 (1972). A petitioner seeking to obtain relief on such a claim must show that (1) the testimony was false, (2) the prosecution knew that the testimony

was false, and (3) the testimony was material. *United States v. Dvorin*, 817 F.3d 438, 451-52 (5th Cir. 2016); *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007). False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict. *Giglio*, 405 U.S. at 153-54; *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

    2.    <u>Analysis</u>

Relying again on the affidavit and report from Charles Ruble, Petitioner contends that Detective Doyle's testimony concerning the cause and location of the accident was unreliable and that other portions of his testimony—particularly concerning speed calculations—were "absolutely false, inaccurate, baseless, and misleading." (ECF No. 4 at 41). As discussed previously in Section III(A)(3), however, Detective Doyle's testimony was reliable "because his opinions were based on his training and experience in evaluating physical evidence at crash scenes more than on a hard scientific inquiry such as calculating a vehicle's pre-impact speed." *Rhomer*, 569 S.W.3d at 672; (ECF No 8-30 at 13). Petitioner has not demonstrated that this determination was unreasonable or that Detective Doyle's testimony was demonstrably false.

Instead, Petitioner presents the opinion of another expert who disagrees with the manor, method, and ultimate conclusion of Detective Doyle's testimony. But the fact that Petitioner's state habeas counsel found an expert willing to critique the reliability of Detective Doyle's methods and conclusions (albeit without examining the same evidence) does not establish that Detective Doyle's opinion was false or misleading. *See Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996) (holding that "the fact that other experts disagreed" was insufficient to show the state's expert testimony to be false or misleading); *Clark v. Johnson*, 202 F.3d 760, 767 (5th Cir. 2000) (holding disagreement between experts was insufficient to overcome state habeas court's

factual determination that the prosecution expert's testimony was not false or misleading). More importantly, Petitioner presented the state habeas court with no specific factual allegations, much less evidence, showing the prosecution knowingly employed false or misleading evidence to obtain Petitioner's conviction. *See Koch*, 907 F.2d at 531 (denying habeas petition because, even assuming, arguendo, that certain testimony was false, no proof of prosecutor's knowledge of its falsity) (citations omitted).

Consequently, viewing all the evidence under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief under *Napue*. Federal habeas relief is therefore denied.

### IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during either his direct appeal or state habeas proceedings was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial, appellate, and habeas corpus proceedings.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner William Rhomer's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

SIGNED this 17th day of March, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE